OPINION
{¶ 1} Scott Weaver is appealing from the decision of the Municipal Court of Vandalia finding him guilty of both failing to stop after an accident and failing to maintain assured clear distance, and sentences for both. The facts of the incident in issue, the evidence presented at the trial, and the reasons for the decision of the trial court are set forth in its decision and entry, as follows:
 {¶ 2} "This matter came for trial on April 21, 2004, present were the Defendant, represented by James Kirkland, the prosecutor and the State's witness, Deputy Wright. The parties stipulated the Defendant's Exhibit B is a report from Bowser Mourner that would identify that the white paint on the subject vehicle is from the Defendant's garage entrance.
 {¶ 3} "The State called Robert Curry as the first witness. Mr. Curry testified that he and his wife were leaving Sam's Club on Miller Lane on November 11, [sic, November 8], 2003. They were traveling East on Stop Eight Road and came to a stop at the intersection of Stop Eight and Webster Street when their van was hit from behind.
 {¶ 4} "Mr. Curry testified that he got out the van and went to the back of the vehicle where he spoke with a man who was in a black sport's car convertible. He noticed that the vehicle did not have a front license plate. He also saw the front grill of the vehicle and said it looked like the grill was pushed in a little and that it looked like a shark's mouth. Mr. Curry and the other individual did not exchange information at that point due to the fact that it was cold outside. He testified that his wife was calling the police on her cell phone, so he got back into the van to wait for the police.
 {¶ 5} "As the Curry's [sic] sat at the sign, he heard a vehicle honk the horn. He said that he got out to tell the individual to go around him and it was at that point that he saw the black convertible was gone. Mr. Curry said that he waited, the police came and he gave his report. Mr. Curry described the driver of the car as a man approximately 36 years of age, 5'9" and weighing 160-170 pounds.
 {¶ 6} "Mrs. Curry testified similarly to Mr. Curry. She testified that she called the police immediately following the collision.
 {¶ 7} "Both of the Curry's [sic] testified that they noticed the black car prior to the collision. Mr. Curry testified that he pointed the vehicle out to Mrs. Curry as they passed the drive where the black car was pulling out because it was a chilly day and the top was down on the vehicle.
 {¶ 8} "Each of the Curry's [sic] further testified that several times later they drove through the parking lot where they saw the vehicle leaving. A week later, they found the vehicle in the lot, took the license number and telephoned the police.
 {¶ 9} "Mr. Thayer, who at the time, worked for the Montgomery County Sheriff's Department testified that he was contacted by Mr. Curry regarding the progress of the case. After reviewing the file, he contacted Mr. Weaver and inspected the vehicle. He did see damage on the left-front side of the vehicle that was unrelated to the accident. He testified that he did not see any damage related to the collision of November 8, 2003, and that Mr. Weaver denied being involved. Mr. Thayer testified that he spoke with Mr. Curry again, then contacted Mr. Weaver and told him that he was going to issue a citation to him for the incident.
 {¶ 10} "Mr. Weaver testified that he was not at the location and does not put his convertible top down when the temperature is under 45 degrees. Mr. Weaver identified Exhibit A as his class attendance and testified that he was in class at ITT Tech the day of November 8, 2003. The document does show that on November 8, 2003 Mr. Weaver attended class that went beyond the time of the collision. However, the document appears to be a generated form the [sic] merely shows the time of the class and that the Defendant attended.
 {¶ 11} "Emily Weaver, the wife of Mr. Weaver testified that there was no damage to the vehicle driven by her husband, other than that on the left front side, which the parties stipulate is not related to this incident.
 {¶ 12} "Based upon the testimony presented, the credibility of the witnesses and the Exhibits admitted, the Court finds the Defendant GUILTY of Failing to Sop [sic] after and [sic] Accident in violation of § 4549.02 and Failing to Maintain Assured Clear Distance, a minor misdemeanor. The Defendant is sentenced to thirty (30) days and fined $250.00 and court costs on the A charge. The jail time is suspended, as is $150.00 of the fine. On the second charge, the Defendant is fined $25.00 and court costs."
 {¶ 13} Mr. Weaver, represented by counsel on appeal, presents the following assignment of error and the three sub-errors in support of his assignment:
 {¶ 14} "The municipal court erred in its determination of Mr. Weavers [sic] guilt, which is clearly against the weight of the evidence.
 {¶ 15} "A. The Municipal Court erred when it credited the eyewitness testimony of Mr. Curry.
 {¶ 16} "B. The Municipal Court erred when it ignored the evidence of Mr. Weaver's class schedule.
 {¶ 17} "C. The Municipal Court erred when it ignored the evidence of the physical condition of Mr. Weaver's car."
 {¶ 18} The appellant first argues that the trial court erred in crediting the eyewitness testimony of Mr. Curry and, for that matter, Mrs. Curry, when they identified in court the defendant as the driver of the offending vehicle. As the appellant points out, it is common knowledge in the legal world that eyewitness testimony, contrary to common sense, is often unreliable. See the discussion by the Supreme Court of Ohio in State v. Buell,22 Ohio St.3d 124, 128-131 (1986). Mr. and Mrs. Curry admitted at the trial that they saw the driver only briefly, failed to ask his name, and did not see the license plate number for the car. In his signed report to the Montgomery County Sheriff's Office, Mr. Curry described the driver as approximately thirty years old, dark hair, about 5'9", and weighed 160-170 pounds. Yet at the trial there was evidence presented that Mr. Weaver wears his hair short and has never weighed more than 135 pounds in his life. As to his height, the appellant notes in his brief that "the only detail Mr. Curry was correct about was Mr. Weaver's height at 5'10," and yet given 5'10" is the average medium height for the American male, that fact is unsurprising." (Brief, at 11). The trial court stated in its decision that one of the reasons he was finding appellant guilty was "the credibility of the witnesses." Were credibility the only issue in this case, we would probably defer to the trial court in its assessment of same and affirm. But we will not, because there is other evidence in this case.
 {¶ 19} First, Mrs. Curry testified that at the time of the accident she got out and saw that the offending car had no front license plate. This would be a significant fact because Mr. Weaver's car did not, in fact, have a front license plate when the deputy sheriff investigated. However, in the report to the sheriff's office signed by Mr. Curry, he never once mentioned that the offending car lacked a front license plate. If he had, this would be a very damaging fact facing the defendant-appellant.
 {¶ 20} Secondly, at the trial Mr. Curry testified in describing the front of the offending vehicle that "the grill of the car was like that and reminded me of a shark's mouth and it looked like the chrome part of the grill was pushed back in further than what it belonged." (Tr. 11). In fact, Mr. Weaver's car has no damage to its front-end and the investigating officer even checked out the possibility that a Mazda dealer had sold front-end parts after the accident, and found nothing like that had transpired.
 {¶ 21} Third, Mr. Weaver's alibi was that he was attending a class at the ITT Technical Institute at the time of the accident. This institute is located near where the accident occurred, and Mr. and Mrs. Curry were convinced that the offending vehicle had emerged from the parking lot of that institute before the accident. Mr. Weaver buttresses the alibi by presenting into evidence a "student attendance" report certified by the registrar of the institute. It shows that on the date of the accident Mr. Curry was "present" in his class from 12:29 p.m. to 4:29 p.m. The certified report does raise a prima facie case that Mr. Weaver was in attendance at the class at the time of the accident, and we agree with the appellant that the trial court was lax in not giving greater weight to this report. The attendance report is unrebutted and during oral argument the prosecutor merely surmised that the defendant could have slipped away from the class during one of its two ten-minute breaks and left the institute. Such surmising does not provide evidence of anything.
 {¶ 22} We find that the eyewitness testimony was not particularly strong, and while the trial court apparently found the testimony of the Currys' credible, we have here a case where hard evidence trumps credibility.
 {¶ 23} We will reverse and remand this case for further proceedings. If the State wishes to retry the defendant, it will have to address the two issues of the lack of damage to the defendant's car's front grill and Mr. Weaver's apparent attendance in class at the time of the accident. The State may find evidence that all Mazda Miata grills, the type of car driven by Mr. Weaver, look like a shark's mouth undamaged.
 {¶ 24} As to the class attendance issue, the State might be able to find classmates of Mr. Weaver or even a teacher of the class to testify that Mr. Weaver did, in fact, exit the class prior to the time of the accident and did not return. On the other hand, the defense might be able to find such eyewitness testimony that corroborates Mr. Weaver's attendance at the class. We leave that for the State and defense to pursue if, in fact, there is a retrial.
 {¶ 25} The assignment of error is sustained, the judgment is reversed, and the case is remanded for further proceedings.
Brogan, J., concurs.